UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAKE D. METRAS,

        Plaintiff,

  v.                                    Case No. 07-C-336

WILLIAM POLLARD et al.,

        Defendants.

**MEMORANDUM AND ORDER**

Plaintiff Jake D. Metras, who is proceeding pro se, lodged a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Plaintiff is currently incarcerated at Green Bay Correctional Institution ("GBCI"). Defendant William Pollard is allegedly the warden of GBCI, while the other defendants are allegedly GBCI correctional officers or staff members. Plaintiff seeks compensatory and punitive damages.

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner plaintiff is required to pay the statutory filing fee of $350.00 for a federal lawsuit. If a prisoner does not have the money to pay the filing fee up front, he or she can request leave to proceed *in forma pauperis* in order to pay the fee over time. To proceed with an action *in forma pauperis*, the prisoner must complete a petition and affidavit to proceed *in forma pauperis* and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of

twenty percent of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.[1]

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. He has also filed the required affidavit of indigence. Although his trust account statement shows that he has no money in his regular account, he was assessed and has now paid an initial partial filing fee of $4.17 based on funds available in his release account. Leave to proceed will therefore be granted.

Next, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this

---

[1] In no event will a prisoner be prohibited from bringing a civil action because he or she has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).

standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

**I. Free Exercise of Religion**

Metras alleges that Defendant Swiekatowski broke his rosary during a search of his cell. Apparently, a fellow prison official characterized the incident as Swiekatowski's attempt to "test the material" of the rosary. Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). A prison may restrict a prisoner's ability to adhere absolutely to a particular tenet of his religion, such as a tenet calling for the use of a particular item, if the prison has sound penological interests that support the restriction and outweigh the prisoner's religious interests. *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996). Metras has no First Amendment freedom-of-religion claim here because he does not suggest that the destruction or impairment of his rosary restricted the exercise of his religious beliefs, *see Employment Div. v. Smith*, 494 U.S. 872, 877 (1990); *Canedy*, 91 F.3d at 33 (inmate's free exercise right does not "depend upon his ability to pursue each and every aspect of the practice of his

3

religion"), or that prison authorities destroyed the item because of its religious nature, or as discrimination against his particular religion. *See, e.g., Sasnett v. Litscher*, 197 F.3d 290, 293 (7th Cir. 1999).

**II. Cruel and Unusual Punishment**

Metras raises three claims of cruel and unusual punishment. First, he alleges that on April 12, 2006, he was placed on control status and put in a cell littered with feces, urine, and old food. It appears that Metras requested cleaning materials for the cell, but his requests were not met. Second, he alleges Defendants Ford and Potts spit in his food, apparently with some regularity although the complaint is less than clear on this point. Finally, Metras alleges that Defendant Kazik flicked on and off a bright light so as to prevent him from getting any sleep during the night.

To prevail on an Eighth Amendment claim, plaintiff must first show he endured conditions that denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, (1981); *see also Wilson v. Seiter*, 501 U.S. 294 (1991). Courts in this circuit have not hesitated to award damages when prison conditions have fallen below the threshold of decency ensured by the Eighth Amendment. *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir.1989). "Not surprisingly, human waste has been considered particularly offensive so that 'courts have been especially cautious about condoning conditions that include an inmate's proximity to it.'" *McBride v. Deer*, 240 F.3d 1287, 1291-92 (10th Cir. 2001) (quoting *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990)). In order to prevail, plaintiff must also show that the defendants acted with a culpable state of mind: "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v.*

4

*Brennan*, 511 U.S. 825, 847 (1994). While Metras has not alleged any defendant knew of the risk of harm posed by the cell conditions, such a defect is not fatal to his claim at the screening stage. What is fatal, however, is plaintiff's failure to specify the defendant(s) allegedly responsible for this deprivation. The caption of the complaint lists 10 defendants, and it is not fair to make them guess as to which one(s) Metras is accusing. (Furthermore, it could well be that the alleged defendants on this claim are not even listed in the caption.) The claim based on placement into the dirty cell will therefore be dismissed, but without prejudice. If plaintiff chooses to file an amended complaint in which he does specify the defendant(s) allegedly responsible, he is advised to comply with the requirements set forth near the conclusion of this order.

As to plaintiff's other Eighth Amendment claims, sleep constitutes a basic human need, and spittal-contaminated food, even if it is not nutritionally compromised, can raise serious sanitary and human decency concerns. I therefore conclude that plaintiff has stated an Eighth Amendment claim regarding the alleged spitting in his food and the light manipulation, although success on these claims will likely depend upon the severity and frequency of the complained-of conduct.

Metras also alleges that on several occasions Defendant Lehman taunted him regarding the conditions of his confinement. In addition, Defendant Kazik allegedly harassed Metras verbally by suggesting that he (Metras) had asked Kazik to submit to anal sex. Plaintiff included with his complaint the affidavit of an inmate who states that Kazik's verbal abuse of Metras was at times laced with racial or ethnic slurs. (Aff. of David A. Newling.) Although such behavior is certainly deplorable, verbal abuse does not give rise to a cause of action under § 1983, even if it is racially or ethnically motivated. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Hoptowit v. Ray*, 682 F.2d 1237, 1252 (9th Cir. 1982). Any claims arising from alleged verbal abuse or verbal harassment will therefore be dismissed.

5

**III. Due Process**

To the extent the complaint is intelligible on this point, Metras appears to allege that on July 3, 2006, Defendant Potts refused to let him meet with a "court-appointed psychiatrist" for a scheduled competency evaluation. (Compl. at 5.) The evaluation apparently had to do with an internal misconduct charge Metras was facing, but here, too, the complaint is unclear. (*Id.*) He also alleges that his complaints within the prison grievance system have been routinely dismissed without adequate investigation by prison officials.

To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. *See Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). A liberty interest exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. If the psychiatrist's evaluation was being undertaken in connection with an internal misconduct charge, plaintiff has not alleged facts sufficient for the court to determine whether any protectible liberty interest was at stake, for the complaint makes no mention of the disciplinary repercussions plaintiff was facing for his alleged misconduct.[2] On the other hand, if the evaluation was being undertaken in connection with a separate criminal charge (i.e., a criminal charge other than the one(s) that led to his present

---

[2] Because prison disciplinary proceedings are not part of a criminal prosecution, "the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, where an inmate has a protectible liberty interest at stake, due process requires that he receive advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decision-maker, and a written explanation, supported by at least "some evidence" in the record, for any disciplinary action taken. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-55; *Wolff*, 418 U.S. at 564-66; *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003). I note, too, that Metras does not specify *any* deleterious consequences that befell him as a result of the missed evaluation.

6

conviction), plaintiff may not bring his claim under § 1983. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that in order to recover damages under § 1983 for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, plaintiff must prove the conviction or sentence has been reversed or otherwise set aside). Rather, plaintiff's concern should be raised with the court that is hearing the separate criminal charge. Under either scenario, plaintiff has failed to state a due process claim arising from his frustrated attempt to meet with the psychiatrist.

I next turn to Metras' allegation that his internal complaints have been routinely dismissed without adequate investigation by prison officials. Inmates have a right to complain to a court about prison conditions and a right to seek redress for their injuries in court. *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). However, the Constitution does not require prisons to have an effective complaint review system or even *any* mechanism for reviewing prisoner grievances. If the state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights. Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim. *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

**IV. Personal Involvement**

I turn finally to consider whether plaintiff has stated any claim against Defendant William Pollard, the alleged GBCI warden. Although plaintiff has alleged that he was denied a right protected by the Constitution, he does not allege the requisite personal involvement by Pollard. The mere fact that Pollard is employed in a supervisory role at the institution does not suffice. The doctrine of *respondeat superior* does not apply to § 1983 claims, meaning that the supervisor will not be held accountable for the actions of those underneath him unless the supervisor's own acts

7

are implicated. In other words, liability under § 1983 must be based on the defendant's personal involvement in the constitutional violation. *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995). Because the complaint alleges no personal involvement on the part of Pollard, he will be dismissed as a defendant.

Thus, because plaintiff has set forth cognizable constitutional or federal claims, the case will proceed.

**THEREFORE, IT IS ORDERED** that plaintiff's request to proceed *in forma pauperis* is **GRANTED**. Plaintiff may proceed with an Eighth Amendment claim against Ford and Potts based on their alleged spitting in his food, and an Eighth Amendment claim against Kazik regarding the alleged manipulation of the bright light. All other claims and defendants are dismissed without prejudice. If plaintiff elects to file an amended complaint in which he names defendants allegedly responsible for placing him into the dirty cell and keeping him there, he must do so in accordance with Rule 15 of the Federal Rules of Civil Procedure.

**IT IS ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's regular prison trust account the $350.00 balance of the filing fee by collecting monthly payments from the account in an amount equal to twenty percent of the preceding month's income credited to the prisoner's regular trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10.00 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint, a waiver of service form and/or the summons, and this order upon the defendant pursuant

8

to Fed. R. Civ. P. 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting to make such service. 28 U.S.C. § 1921(b). The current fee for waiver-of-service packages is $8.00 per item. The full fee schedule is provided in 28 C.F.R. § 0.114(a)(2), (a)(3). Even though Congress requires the court to order service by the U.S. Marshals Service when an impoverished person is permitted to proceed *in forma pauperis*, Congress has not provided for these fees to be waived, either by the court or the U.S. Marshals Service.

**IT IS ORDERED** that the defendants shall file a responsive pleading to the plaintiff's complaint.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that, from now on, he is required, under Fed. R. Civ. P. 5(a), to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the clerk of court's office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

9

Nothing in this order or in § 1915A precludes a defendant from moving to dismiss any claim identified in this order or potentially existing in the complaint if the defendant disagrees with my analysis or believes I have overlooked something during my screening.

Dated this   16th   day of May, 2007.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
